Good morning. My name is Vicki Merrold Buchanan. I'm here on behalf of Manuel Navarez. The statute in this case denied Mr. Navarez and those similarly situated with the opportunity to earn good behavior credits solely because of their status as having been validated as gang associates and also placed in the special housing unit of the prison that they were in. Under the old statute, Mr. Navarez and those like him would have been entitled to earn good behavior credits. And if they earned good behavior credits, they would have been entitled to up to one-third off of their remaining sentences. Let me ask you this. This is an AEDPA case, right? Yes, it is. If I understand it correctly, you set me straight if I've got any of this wrong. The State court ruled that they have a California precedent that says this new statute isn't ex post facto, it isn't retroactive, because number one, whatever credits he's already earned, they're not forfeited. He gets to keep whatever credits he's already earned. And number two, it only affects him going forward. If he refuses to disassociate with the gang from this point on, that's how the statute operates. For us to grant habeas relief, we'd have to find that that reasoning is unreasonable, not just wrong, but kind of off the wall. Why is that reasoning off the wall? It is off the wall because as of the time the statute went into effect, Mr. Navarez was entitled to earn those credits. He was entitled to earn those credits from the time he was convicted of robbery until the time he came in there. The California court, the appellate panel that made this decision, if you look at the reasoning, they made it up. They made up the purpose of the statute. They said that the purpose of the statute was to punish ongoing crime. And that's not what the purpose of the statute is at all. They don't know what the purpose of the statute is. This is not like for this is not a case where he all of a sudden he now has to prove a negative, he has to prove I am no longer involved in criminal conduct. Well, no, there is a procedure where he can debrief and disassociate himself with the gang. But that takes forever. And that's proving a negative. He didn't have to debrief on January 24th. He did not have to do that. He has been put into a position of where his opportunities have been restricted and totally eliminated. There is nothing in the record anywhere that shows that on January 25th, the State Court said, well, he's continued to have misconduct because he's still in the shoe as a validated gang associate even. He can't prove that. Is there anything in the record that tells us how often people in his position who have been put in the shoe because of a, quote, validation of gang association have successfully debriefed? Very few. Now, if you look at the one case that I cited, I can't remember the name of it just off the top of my head right here. Very few. Because the purpose of debriefing is that you have to go and you have to be a snitch. You have to go into the prison officials and you have to tell the prison officials everything you know about the gang. And in order to do that, then you need to get protective custody. And if they don't find your information, it's totally at their discretion. He didn't have to do anything that required the discretion of someone on that other day. So ---- Now, I think I just heard you say, and it accords with my common sense of it, that among other things, debriefing puts the debriefer in some physical danger, because he either will be a snitch or will have been perceived to have been a snitch. That's true. And then also, it's the other problem with this is the fact that if you're an associate ---- now, my client is not a member of a gang. An associate can be somebody who passed another person in the hall and said hi to them, and that's a known gang member. There's very, very low thresholds put in administrative proceedings in the SHU. It's just simply there's a last source document, which could be anything. It could be something from a prison guard. It could be someone observing a visitor that came in to see them, and they think that might have some sort of gang affiliation. There's no hearing that goes on with this placement in the SHU or the validation process. It's pretty limited. And it's more a matter of administrative convenience to put them in there. That all may be true, but my understanding is your sole argument is that this is being applied retroactively. It is, because I'm not ---- Okay. So the question for us is not whether the briefing policy works or doesn't work or whether you're in danger or anything else. Your only argument that you raised below that was dealt with by the State court is that you just can't apply it to this guy because he committed this crime prior to the effective date of the statute. Also, he was validated before the date of the statute. It's totally a retroactivity problem, not anything else. Is that right? Look at Weaver v. Graham. That's a separate case. But am I right about that? This is an ex post facto issue as far as you're concerned. Yes, it is. Okay. It is totally an ex post facto situation. Look at Lentz. Look at Weaver. Weaver said that the guy on day one, when he was able to earn a certain amount of credits, on the next day, for no change at all, just because of the statute, no other change, he was entitled to only receive less ---- was entitled to receive less credits. And the Weaver court said, you know, you are being disadvantaged because something has changed. In this case, the possibility was totally eliminated, totally eliminated. There was ---- because of the ---- and what's he going to do? He can't ---- if he was going to debrief, that could take 12 years. That's the only way he can get out of it. Nothing else changed. The salient point here is this. It is one of the salient points. In the classification procedure, if you look at page 56 of the ER, that's the document that he received. On the 12th ---- on February 14th, he received a document from the Bureau of Prisons which said, you are no longer entitled to earn one-third credit. You're only entitled to ---- you are entitled to zero credits. And the only reason that we're doing this is because you are ---- you were entitled to it two years ago. It didn't give ---- this form was filled out a month and a half after the case ---- after the statute went into effect. It didn't give any individualized determination to him that, oh, you're not allowed to get these credits because you are a validated gang member. Look at the Lentz v. Mathis case. That's a case where they said that you can't retroactively change something that someone was entitled to on one day and make it you're not entitled to it anymore. He was entitled to the opportunity on the 24th of January, and the statute took that away on the 25th of January. And there is absolutely no evidence anywhere in the record that says that Mr. Navarez has continued any gang activity. If he was doing gang activity under the old statute, then they wouldn't give him good time credits. So nothing changed except for the statute. So it is a classic retroactive situation. If you look at the ---- As I understand your argument, it is that before the passage of the statute he was entitled to earn good time credits merely by being good. Right. After the passage of the statute, he faces a very substantial additional burden before he may earn good time credits, and that burden is going through the debriefing process, which is long and dangerous with uncertain outcome. And so that this is retroactive in the sense that a burden has now been placed on him that was not placed on him at the time of sentencing. I have to confess, I'm more or less where Judge Ilston was. Were this coming to me as an original matter, I would find it a violation of ex post facto. But I'm struggling with the question that Judge Silverman put on the table, that is to say how wrong was the California court. That's a hard one for me. Well, they made their ---- if you look at the other ---- the factual finding aspect of Ed Patu, look at this. He made it up. The judge panel in the court of appeals made it up. They said the purpose of the statute was to punish. Well, you know what? The purpose of the statute is often determined by the effect of the statute. And if the effect of the statute is X, it's a fairly good guess that that may be the purpose of the statute. So, but, you know, I think that the reasoning behind the California, as I mentioned and Judge Ilston also mentioned that in her ruling, there are due process problems as well with this particular finding of the California court of appeal. Because they're saying that, okay, you don't get these credits because you have been administratively placed in the shoe. And so you're going to get punished for being administratively placed in the shoe. You're going to be punished because you didn't have a hearing. You didn't have anything to ---- any reason to ---- to fight against the placement in the shoe because it's not a ---- you don't get due process for that. It's just administrative. So there's no big consequences. But now, now, you didn't get that hearing before, but now because you've been in there, now retroactively you can be punished for being there. Roberts. Thank you very much. I see you down to less than a minute. Thank you, Ms. Buchanan. Good morning. Good morning. May it please the Court, Jennifer Ross for Respondent and Appellee Warden Barnes. The State court decision rejecting Navarrez's ex post facto claim did not contradict or unreasonably apply any clearly established Federal law. There are no Supreme Court holdings that squarely address a change in credit earning because of ongoing prison gang affiliation. Weaver and Lentz only addressed credit schemes that were in place at the time of sentencing and plea agreements without regard to inmate conduct. Section 2933.6, in contrast, is only triggered by ongoing prison gang activity after the statute's effective date. But how do you soften the argument that I just put forward in the proposition I just put forward to your adversary, and that is before the passage of the statute he was entitled to earn good time simply by being well behaved. After the passage of the statute, he cannot earn good time unless he goes through this debuffering process. I take it as an accurate description of the debuffering process, that it is time-consuming, that it is often very difficult to predict because it is discretionary in the prison authorities as to whether or not to grant him new status as having been unaffiliated, and that it is very frequently dangerous because in order to go through debriefing, he's required to be a snitch. So he either has to be a snitch or will be perceived as a snitch. Well, that strikes me as an enormous burden imposed upon him as a result of the statute that simply did not exist at the time of his sentencing. So how do you respond to say, well, you know, nonetheless, it's not ex post facto, or that even if it is ex post facto, this California court was not unreasonable in thinking so? Your Honor, there's a number of problems with the various suppositions in what you just stated. First of all, the district court record did not contain any factual findings concerning the debriefing process. And in order for the court's recent decision in Griffin v. Gomez, it unfortunately was not briefed in this case because it is a very recent decision. But in that case, the court seemed to suggest that debriefings routinely occur, and in fact, there are thousands of them. So it would be a problem to assume that these various findings about the debriefing process without that having been briefed or addressed below. And in fact, the California courts had found as factual findings that that's the debriefing process was available and that Mr. Navarez's gang activity was continuing. These are factual findings that must be shown to be incorrect by clear and convincing evidence. That hasn't been done. Excuse me. You began your argument by saying there's no Supreme Court case that this California decision is contrary to. Ms. Buchanan says, oh, yes, there is. There's Weaver. What's your answer to that? Weaver addresses a fairly distinct circumstance because the inmate in Weaver could do absolutely nothing to change his credit earring. And although the debriefing process may injustice Judge Fletcher's earlier comments, it may not be an easy way out of the prison gang. The State court had found that it was within Mr. Navarez's ability to debrief from the prison gang. So in Weaver, you have a credit earring scheme in place at the time of sentencing that is suddenly changed, and there's nothing that the inmate can do to change his credit earring. Whereas here, this is ongoing prison gang affiliation that's continued after the statute's effective date. And there is something that Mr. Navarez can do. And Your Honor had earlier said that the State court's decision here needs to be off the wall. And as the Supreme Court held in Harrington v. Richter, the State court needs to have made an error so unjustified as to be well comprehended and understood in existing law beyond any possibility for fair-minded disagreement. So this is really crazy off the wall. And there is no showing that the State courts have made such an error in light of any existing Supreme Court holdings. Unless there are further questions, I'll conclude. Thank you, Ms. Ross. Ms. Buchanan, I think you've got about a minute left or so. Buchanan. Thank you. I don't know what findings we're talking about, because there were no findings in this case. The decision of the State court was one line. It was an affirmance. I mean, it was a denial of a petition for habeas corpus based on the Samson case. So there was no findings about Mr. Navarez's ongoing involvement in the gang. There is no finding of that. Nowhere. Nowhere on the record. Finally, Lentz v. Mathis is another case that you should look at, because it's the most recent one that reiterates it, brings in everything. It has to do with automatic credits, not good behavior credits, but automatic. And in that particular case, it was another case where the status was neutral. In that case, the guy earned credits and they were taking them back. That's part of this decision, but that's not the only decision. Because if you look at the dissent in that case, the dissent in that case was concerned that it was more broad than just the guy had his credits taken back. It's broader than that. It says that you can't do it, period. Oh, in this case, it was even worse because they took the credits away. But in Lentz, it was a status. The change was because of people who had committed murder-related crimes. So it's almost identical to this particular case. Thank you. Roberts. Thank you, too. The case just argued is submitted. Good morning.
judges: Silverman, Fletcher, Bybee